First, Mr. Forney. Go ahead. Good morning. May it please the court. My name is Mike Forney and I represent the appellants. There are 238 appellants in this appeal who are victims of an oil and gas Ponzi scheme which defrauded them out of $24 million. The district court granted appellees motion for summary judgment on a statute of limitations defense. In the district court's decision, the district court denied appellants the tolling arguments. Appellants bring this matter up on appeal to reverse the district court's decision and remand this case back to district court for further proceedings. There are three issues before the court, all of which involve the tolling doctrines, two of which are statutory and the other is recognized by common law. A brief overview of these issues are as follows. Section 16.063, also referred to as the absentee statute, tolls the statute of limitations when a person who a cause of action is maintained is absent from the state of Texas. Under issue two, section 16.064, also referred to as the savings statute, tolls the statute of limitations when the first action is dismissed for a lack of jurisdiction but is refiled as the same action in the second court within 60 days of the dismissal being final. Finally, under the third issue, the court needs to consider the application of whether the doctrine of equitable tolling applies to this case. Again, the district court ruled against the appellants on all three tolling arguments to which appellants now take appeal. To fully understand the gravity of appellants' arguments, it is important for the court to hear a brief overview of the material facts. Historically, there has been two lawsuits filed by the appellants which interplay with one another. For discussion purposes, I will refer to the first matter as the state court matter, and as the second case, I will refer to it as the federal court matter. As I will point out in my summary, there has been overlap between the two. Late in 2005, the appellants discovered a massive fraud arising from an oil and gas Ponzi scheme which appellants have alleged involved the appellees. In response, the appellants formed Big Rock Investors Association, the association I will refer to as BRIA. The individual members gave BRIA a power of attorney serving as their agent to prosecute claims against the appellees. Appellants acting through BRIA filed their original petition in state court fully disclosing that they were parties to the lawsuit. In response, the appellees took three major actions to BRIA's lawsuit. One, they filed a special appearance contesting personal jurisdiction. Two, they filed a plea to the jurisdiction contesting subject matter jurisdiction. And three, they objected to depositions based on the fact that the FBI had confiscated all the records and the sham related entities needed to be put into bankruptcy. At or around this time, the court was abated. This is again the state court lawsuit. It was abated for three and a half years. It was reinstated once the bankruptcies had resolved and the FBI had returned the records. Once the court, once the case was reinstated in state court, the appellees re-urged their plea to the jurisdiction to which the state court denied. So this is, now we're looking about five years into the lawsuit. The court hears the plea to the jurisdiction and denies appellees' plea to the jurisdiction, giving BRIA the proper investment vehicle for the members to prosecute their claims. Approximately one year later, the appellees asked the court to rehear their plea to the jurisdiction to which the state court dismissed the lawsuit. Shortly thereafter, appellants timely filed their notice of appeal in the state court system. A week later, the court of appeals had notified the appellants that the order dismissing the case was not final. There was some counterclaims still remaining in the state court. Those were resolved about a month and a half later, making that original order final. Now, during this time, and this is where you get some sort of overlap, you have in the state court matter, the BRIA going through, the individual appellants going through BRIA appeal the ruling that BRIA did not have jurisdiction. They file a lawsuit naming themselves individually in the federal court matter. The state, the court of appeals upheld the trial court's decision, denied the jurisdiction of BRIA, and that decision was upheld by the court of appeals on August 23, 2012. And the reason that's important is because, excuse me, that's August 15, 2013. That court of appeals, and this is relevant later in the argument, that court of appeals was resolved one year after the individual appellants filed their claim in federal court, naming themselves individually. In light of that procedural history, I'd like to address the equitable tolling argument first. This is a doctrine. It's a common law doctrine recognized by the court. It's a catch-all provision. It applies when you have a strict application of the rules which cause an inequitable result. In this case, you have 238 aggrieved victims who have waited years to litigate their claims, cooperated with the courts fully, participated in the legal system, and then after six years are told that their claims are stale because the investment vehicle, excuse me, the litigation vehicle to which they are prosecuting their claims was deficient. When you contrast that with the extraordinary circumstances of this case, and the record reflects this, the FBI had confiscated all the records. There's no dispute. The appellees, the appellants, this case could not be adjudicated or prosecuted during the time the FBI seized it. I mean, when I say they seized the records, they confiscated everything. You know, there was 91 banker boxes. There were seven computers. There was absolutely nothing left related to the bankruptcy, the sham entities. And so that took about, with that and the bankruptcies, that took about three and a half years. And the reason that's important is because that plea of jurisdiction that the appellants, excuse me, the appellees that filed it early in the lawsuit didn't get heard until after the abatement. So once it was reinstated, the court rules that they didn't have jurisdiction, and so now they're left having to refile their lawsuit. In the equitable tolling analysis, the court should ask two fundamental questions. The first question is, did the party have notice of the claims and issues? And the answer to that question is just absolutely yes. Appellees were fully engaged in this lawsuit from the very beginning. As I explained, in the state court lawsuit, they filed a plea to the jurisdiction. They filed the special appearance, which is objecting to personal jurisdiction. And moreover, they objected to tendering themselves for deposition because of the bankruptcies and the FBI records. So in terms of having notice, absolutely. And then the second question is, did the plaintiffs take action before the claims had expired? And again, the answer to that question is absolutely yes. Each member of BREA signed a power of attorney giving BREA the specific purpose to prosecute their claims. There was no other purpose for BREA. This isn't an association that's just standing by itself. It was formed with a specific purpose to adjudicate appellant's claims. Was there anything about the way in which this BREA thing was set up that precluded whoever was acting on behalf of BREA, presumably the lawyer, from filing the lawsuit in the names of the individual plaintiffs? I mean, it wasn't the BREA creation documents did not require the lawsuit to be filed in the name of BREA. It was simply a management device, right? That's correct. So it could have been filed in the name of all the individual plaintiffs as well as in the name of BREA. You're absolutely correct on that point, Your Honor. And nothing prevented the individuals from filing a separate lawsuit. I think that sort of— Well, no. I mean I'm not suggesting that they should have just ignored the machinery. Yeah. I'm saying that whoever had the authority to act on behalf of BREA could have filed the first lawsuit in the names of the individuals involved. That's correct. Nothing prevented them from doing that. And so—but to kind of respond to that point, keep in mind, Your Honor, Judge King, that you had five years go through the litigation process, and we have a court order denying their plea to the jurisdiction. So at that point, unequivocally, the appellants, the individuals, have a reasonable belief that the BREA not only had the authority, but legally had the authority and was properly adjudicating the claims. And that was sort of reaffirmed by the district court when it denied the plea to jurisdiction. So at that point, there's—the case appears to be being prosecuted appropriately. Okay. In light of the—just to kind of conclude on my equitable tolling, you have, in this case, extraordinary circumstances. I mean the FBI seized the records. It couldn't be adjudicated. You had bankruptcies involved. The appellants properly participated in the system, and this would be a very appropriate time for the court to step in and say that their claims should be tolled under the equitable tolling doctrine. In the second issue, it's under Section 16.064. It's the Texas Savings Statute. And the way this savings statute works is it says if the party files a lawsuit and that lawsuit is dismissed for a lack of jurisdiction, as long as it files the same action in the appropriate court, that within 60 days of it being dismissed, then the claims are tolled from the original lawsuit to the second lawsuit. But isn't that where the claimant files in the wrong court? You didn't have that here. No, no. I mean this has been applied pretty broadly. I mean it's been applied where an individual has filed the wrong cause of action. That was one of the cases cited. It was an attorney, and he filed—he was an attorney. He represented someone in a divorce, and he used the divorce decree as an interest of party to collect his fees. He filed it in family court and— You better get on to 16.063 before you run out of time. Okay. What evidence is there that that exception would apply to McIntyre? The evidence that the tolling should apply to McIntyre, he was a nonresident. As this court has applied in Jackson v. Speer, there are only— Most of the cases are when they basically come to Texas and create a cause of action, either via tort or a contract. And so in that circumstance, those claims are tolled. They're treated as essentially a resident out of the state. And there's nowhere in the record that the Apleys, particularly McIntyre, only McIntyre, there's no evidence in the record to conclusively prove that he was not—that he was present in the state of Texas. They didn't—they totally ignored that argument. They totally ignored that evidence, and they just basically took the position that the statute does not apply to nonresidents, which is inconsistent with Jackson v. Speers, which is a case that comes out of this court. There's a subtle argument to it that even if you have that situation where they come to the state of Texas, an outside resident comes to the state of Texas, causes an action, and then leaves the state of Texas, our argument is that it tolls the statute of limitations. I've read a case that there is a—that potentially the long-arm statute would defeat that, but he signed an affidavit saying he's not subject to the long-arm statute. Therefore, we would still argue that it's tolling. Thank you, sir. Thank you very much, Your Honor. You have five minutes on rebuttal. Mr. Bradbury. May it please the Court. The appellants in this case have failed to demonstrate any error on the part of the district court, which properly rejected each of the three tolling theories put forth by the appellants to revive the statute of limitations and repose. These issues were properly considered by the district court and rejected, principally because none of the three theories pleaded by the appellants demonstrated any reason why suit had not been filed timely in the case. These issues were briefed and considered by the court on a motion to dismiss basis, then a motion for summary judgment by the magistrate, and then objections were filed by the appellants and then the district judge thereafter ruled on those objections and adopted the position of the magistrate. Three theories that the appellants have put forth. First, as to 16.063, that statute in Texas is there for the purpose of when someone incurs a debt or a tort with a Texas resident and then is absent or disappears or is unable to be reached, that statute enables tolling to apply. Now, in this case, the appellees are merely nonresident defendants. They're not hard to find. They have responded to the state court lawsuit. They responded to this federal court lawsuit without any jurisdictional objection. And the Texas Supreme Court has been extremely direct and clear in what law applies. 16.063 does not apply to toll the period of limitations for nonresident defendants that are subject to the Texas long-arm statute. The appellants have pleaded and used the Texas long-arm statute not only in the state court action but likewise in this federal action that was filed in the Eastern District of Texas. So legally, that statute has no application here, but practically it has no application either because the appellants have not demonstrated any reason why the inability to serve or reach the defendants delayed their timely filing of the lawsuit on behalf of the individual plaintiffs. As to 16.064, the purpose of that statute is, as Judge Clement pointed out, is for a plaintiff who properly commences and timely commences suit in a wrong court or a wrong forum and somehow later suffers an adverse ruling on jurisdiction dismissing the whole case because this jurisdiction can be taken up at any time. The divorce case that was mentioned just a moment ago, the lawyer filed suit. It went all the way to the Texas Supreme Court, and at that point the case was dismissed for jurisdictional grounds. The court there applied 16.064 because it was the same suit, it was the same plaintiff, and tolling applied under 16.064. That statute has no application in this proceeding. The primary reason is that the statute requires that the case be the same. Now, appellants in their brief as well as in argument have interchangeably referred to the appellants filing the state court action. That's not accurate. Brea was the sole plaintiff in the state court action. This federal court action was filed in the name of the individual plaintiffs. Brea was not a part of it. So for that reason alone, 16.064 fails. In addition, 16.064 is predicated on the notion that one properly commences a suit in a forum which is determined later to be the wrong forum, tolling would apply to allow that plaintiff to file in a second forum. And we do not have that case. They did not file in the wrong forum. The suit that's been filed on behalf of these individual plaintiffs was cognizable in state court as it is cognizable in federal court. The reality is the suit itself was defective. The form of the suit was defective. Because they filed as an unincorporated association, there was no subject matter jurisdiction. Brea was put on notice in the state court action in 2006 of that defect in that lawsuit. But throughout that entire time, from the time that notice was, suit had not been commenced in the name of the individual plaintiffs until this case was filed in 2012, some six years and well after the expiration of the statute of limitations. That is from 2006 forward, that is an intentional disregard of jurisdiction. Like 16.063, this statute in no way offers appellants any justification for why suit wasn't timely filed. We have argued over whether it's the same and what courts have treated as to those interpretations, but factually, appellants have not offered this court any justification as to why suit was not timely commenced. That theory fails legally, but practically it fails too, and that is what the district court found. Repeatedly, as to each of these three tolling, that there was never any explanation or justification for the plaintiffs not filing timely suit. Well, he said it was because the FBI had the records. Well, I'd like to deal with that because. The bankruptcy was. Correct. Let me address that, because the appellants have made, principally in their equitable tolling argument, use of the FBI had the records, there was an abatement for a lengthy period of time, and in actuality, as to the FBI records, they did have them, but that in no way justifies, and the district court specifically addressed this, that in no way justifies the failure to timely file suit. It may have, you know, the availability of those documents may have been relevant as to whether the suit could go forward, but it in no way justified the failure to file suit on behalf of the individual plaintiffs. So you think they should have filed it and asked that it be stayed pending the resolution of the FBI? They should have timely filed suit on behalf of the individual plaintiffs, because in 2006, some six months after that first state court suit was filed, we filed and gave notice to BREA that there was a significant defect and an absence of subject matter jurisdiction, and yet they did not at any time commence lawsuit on behalf of the individual plaintiffs. And the abatement is similar. They have utilized the existence of an abatement, but I asked the court to look closely at the record. The appellants have not offered any record evidence of the period of that abatement, which in actuality was only a period of 30 days that commenced in 2008. It was not a four-year abatement. But notwithstanding, as the district court found, notwithstanding any abatement or the existence of FBI records, the district court made very clear it was a simple act to timely file suit. The existence of limitations was very well known to the state court. The appellants in this case did, on one occasion, file suit on behalf of the individual plaintiffs in state court. The state court struck that amendment and struck those parties. That issue was not appealed in state court. They knew well the difficulties they had with the statute of limitations, and they sought refuge in federal court with a new judge unfamiliar with the facts in state court. And interestingly, in the suit that was filed in the Eastern District of Texas on behalf of the individual plaintiffs, their Exhibit A, which lists all of the individuals, all the claimants, and the transactions, omitted the transaction dates for each of the individual plaintiffs. Only after we filed a motion to dismiss and for further clarification, and the district court in this case ordered them to do that, they had to remove the redactions from that chart, which obviously revealed the obvious statute of limitations problems in the case. So the appellants were entirely entitled to seek a parallel proceeding in federal court, but we are talking about tolling in the commencement of statute of limitations. And the appellees believe that the appellants chose to go to federal court in order to get a new judge unfamiliar with the facts in the state court action because the obvious statute of limitations existed in state court. Lastly, as to equitable tolling, the cases are clear that is an extreme and rare remedy, and principally, although the appellants have cited federal cases, actually it should be state law tolling, but the cases are much the same in terms of the analysis. Equitable tolling is not a casual grant to those that seek it. It requires extreme facts, and most of the cases require proof that the other side, the defendants, somehow concealed or acted improperly to deceive the plaintiffs about the existence of that. Here, there is no evidence in the record, and that simply didn't happen. In fact, in 2006, the appellees put the appellants on notice of the problem with their state court lawsuit, and they made their decision not to file, not for one month, not for two months, but for more than six years. Only after receiving an adverse ruling from the state trial court did they then file this parallel proceeding. And the concealment of the transaction dates in Exhibit A to the complaint that was filed in this case is telling. If the tolling theories that the appellants offer this court to revive the statute of limitations and the statute of repose were viable, were a sufficient explanation for the failure to file on behalf of the individuals, the proper parties, they would have revealed those rather than attempting to keep them from the district court. But once they were ordered to replead and put those transaction dates, it became obvious. Both the magistrate and the district court at length went through each of the three tolling theories that have been offered by appellants and legally determined that the elements had not been met, but practically determined that none of the three, 16063, 064, or equitable tolling justified or explained practically how it impeded the appellants. Let me ask you about 16063. There were allegations made by Mr. Aginbard that McIntyre traveled to Texas to discuss and oversee management and operations of the entities which defrauded the investors. He also said that there were inferences that he would have entered into contracts in Texas. So why wouldn't these allegations require you to refute this attempt to apply 16063? In other words, why would you have to refute that if he had enough, made enough allegations in his pleadings with respect to McIntyre's presence in Texas? So I can understand the question. Why would appellees have to refute that? If he established this presence in Texas so that the tolling provision would come into effect, then if you don't want it to come into effect, you would have to negate it. But there was no attempt to do that. The plaintiffs or the appellants pleaded 16063 and argued that on summary judgment. And the Texas Supreme Court says as non-resident defendants, if the long-arm statute applies to them, then they are deemed present in the state. So you're just relying, I know you argued that before, you're just relying on the provision with respect to the long-arm statute? The 16.063 and Kerwin v. Sauceda, the two Texas Supreme Court cases that are in our brief, state that if the long-arm statute applies, the non-residents are deemed present in the state. Therefore, 16.063 has no application to tolling. So they would be amenable to suit as well as service? Correct. They are deemed present in the state under the long-arm statute. And that's simply the case. In this case, there was no contest to jurisdiction at all. The appellees were served and responded. In the state court, only Mr. McIntyre filed a challenge to the special appearance, personal jurisdiction. The other defendant, Applee in this case, did not. But the important thing, although the appellants have made issue with the contest to jurisdiction, is that it is the appellant's pleadings in both cases, the state court and this, that they availed themselves of the long-arm statute. And under the Texas Supreme Court cases, if that statute applies, which appellants have averred that it does in both this case and the state court case, 16.063 has no application as they are deemed present in the state for purposes of that tolling. Appelees believe that the district court thoroughly considered these issues on three separate occasions. They were fully briefed by the parties. And the court was clear that the appellants had demonstrated no justification for timely filing suit. And we ask that this court affirm the district court. Thank you, sir. Thank you. Mr. Formey. May it please the court. I'd like to start with section 16.064, the savings statute. And the reason I want to start with that, and this is coming straight from the Fifth Circuit, and the Fifth Circuit has noted legislative history, and the point I want to make is when they're analyzing cases under this statute, they continually reference the legislative history. And the legislative history says this. It is manifest that the act is remedial in every essence. It should therefore be given a liberal construction with focus on the effect of the adjudgment or order and not its form by the name of which it's called. Now, the reason that is important is because when we go back to the state court lawsuit and the plea of jurisdiction is granted, that in essence dismissed the individual party's case. I mean the only purpose Brea is there is because it's prosecuting the claims of the individual appellants. And so the effect of that dismissal order essentially dismissed their case. So I think that's critical for the court to note that that was the effect of the order and it would be appropriate, and the appellants timely filed their second lawsuit. I know that there's a 60-day discussion, but from the court's case, from this court, final essentially means when the appeal decision is rendered and you file within 60 days of that appeal. So there's absolutely no question we filed the second lawsuit within 60 days. And so you have to look at what the effect of the order was coming from the trial court. The appellants timely filed their second complaint in the federal court, and therefore Section 16.064 should apply. In reference to 16.063, the court has been very keen on that Apley McIntyre filed a special appearance in the state court. He objected to, he said, Texas does not have personal jurisdiction over me. And that special appearance never got ruled on. It was out there. Counsel said, he said, if I lose on this plea of jurisdiction, I'm going to submit that special appearance, and we're going to get McIntyre out of here. And so he knew that that was his next ammo in the state court case. So they were well aware of it. There was more ammunition that they were going to use to keep him from the state court lawsuit. So they continually point to the magistrate, the district court, and the appellees said, well, we pled that he's susceptible to the long-arm statute in our federal complaint, and therefore it doesn't apply, totally ignoring the verification special appearance he filed in the state court. The thing that, here's what bothers me the most, and I think it was an abuse of discretion, even though this is a de novo review, is the only way that this court can uphold the district court's decision is if they totally ignore everything that's gone up to this point. They have to totally ignore that Brea was established, that they adjudicated their claims in the state court, they properly prosecuted him, they beat the plea of jurisdiction, the jurisdiction was later granted, but then you have to ignore the FBI records, ignore the abatement. That's the only way that this court can affirm the district court's decision, and it's just, it would be terribly unfair and it would be grossly unjust and it would just be wrong. The appellants thank the court for their time, and I have, thank you very much. Thank you, sir.